# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **ROTHSCHILD PATENT IMAGING LLC,** | |
| Plaintiff, | **CASE NO. 1:22-cv-01475** |
| v. | **PATENT CASE** |
| **CONFIDE, INC.,** | **JURY TRIAL DEMANDED** |
| Defendant. | |

## DEFENDANT CONFIDE, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM

## **TABLE OF CONTENTS**

**Page**

I.    STATEMENT OF THE ISSUE ................................................................................... 1

II.    STATEMENT OF THE FACTS .................................................................................. 2

III.    LEGAL STANDARDS ............................................................................................... 3

    A.    Rule 12(b)(6) ................................................................................................... 3

    B.    35 U.S.C. § 101 .............................................................................................. 4

IV.    ARGUMENT ............................................................................................................... 6

    A.    Step 1: The Claims of the '797 Patent are Directed to the Abstract Idea of Receiving, Filtering, and Transmitting Images ......................................................... 6

    B.    Step 2: The Claims of the '797 Patent Fail to Recite Any Inventive Concept. .... 10

    C.    No Factual or Claim Construction Disputes Prevent the Court From Ruling. ..... 11

V.    CONCLUSION ........................................................................................................... 12

# TABLE OF AUTHORITIES

<div align="right">**Page(s)**</div>

**Cases**

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
   838 F.3d 1253 (Fed. Cir. 2016) ..................................................................................................9

*Alice Corp. Pty. Ltd. v. CLS Bank Intern.*,
   573 U.S. 208 (2014) ............................................................................................................ *passim*

*Apple, Inc. v. Ameranth, Inc.*,
   842 F.3d 1229 (Fed. Cir. 2016) ..................................................................................................9

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................................4

*Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*,
   687 F.3d 1266 (Fed. Cir. 2012) ..................................................................................................5

*BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*,
   827 F.3d 1341 (Fed. Cir. 2016) .............................................................................................7, 10

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................................3

*Bilski v. Kappos*,
   561 U.S. 593 (2010) ................................................................................................................4, 5

*Chamberlain Grp., Inc. v. Techtronic Indus. Co.*,
   935 F.3d 1341 (Fed. Cir. 2019), *cert. denied*, No. 19-1299 .......................................................7

*Content Extraction and Transmission LLC v. Wells Fargo Bank, N.A.*,
   776 F.3d 1343 (Fed. Cir. 2014) ..................................................................................................9

*Cuvillier v. Taylor*,
   503 F.3d 397 (5th Cir. 2007) .....................................................................................................4

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011) ..................................................................................................5

*Dealertrack Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012) ..................................................................................................6

*Diamond v. Chakrabarty*,
   447 U.S. 303 (1980) ...................................................................................................................4

# TABLE OF AUTHORITIES (cont'd)

                                                                                            **Page(s)**

*Diamond v. Diehr*,
   450 U.S. 175 (1981) ............................................................................................................5

*EasyWeb Innovations, LLC v. Twitter, Inc.*,
   689 F. App'x 969 (Fed. Cir. 2017) .....................................................................................7

*Elec. Power Grp., LLC v. Alstom S.A.*,
   830 F.3d 1350 (Fed. Cir. 2016) ....................................................................................6, 10

*Enfish, LLC v. Microsoft Corp.*,
   822 F.3d 1327 (Fed. Cir. 2016) ..........................................................................................6

*Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*,
   955 F.3d 1317 (Fed. Cir. 2020) ..........................................................................................7

*Fort Props., Inc. v. Am. Master Lease LLC*,
   671 F.3d 1317 (Fed. Cir. 2012) ..........................................................................................5

*Homeward Residential, Inc. v. Sand Canyon Corp.*,
   298 F.R.D. 116 (S.D.N.Y. 2014) .......................................................................................4

*Intellectual Ventures I LLC v. Capital One Bank (USA)*,
   792 F.3d 1363 (Fed. Cir. 2015) ........................................................................................10

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
   850 F.3d 1332 (Fed. Cir. 2017) ..........................................................................................6

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012) .......................................................................................................5

*Parker v. Flook*,
   437 U.S. 584 (1978) ...........................................................................................................5

*Rothschild Patent Imaging LLC v. Gnome Foundation*,
   No. 4:19-cv-05414-HSG, Dkt. 34 (N.D. Cal.) .................................................................11

*SAP Am., Inc. v. InvestPic, LLC*,
   898 F.3d 1161 (Fed. Cir. 2018) ..........................................................................................6

*TLI Communications, LLC v. AV Automotive LLC*,
   823 F.3d 607 (Fed. Cir. 2016) ................................................................................8, 9, 10

*Ultramercial, Inc. v. Hulu*,
   LLC, 772 F.3d 709 (Fed. Cir. 2014) (Mayer, J., concurring) .........................................5, 6

**TABLE OF AUTHORITIES (cont'd)**

**Page(s)**

**Statutes**

35 U.S.C. § 101 ................................................................................................................. *passim*

**Other Authorities**

Rule 12(b)(6) of the Federal Rules of Civil Procedure ................................................................. 1, 3

Receiving, filtering, and transmitting images is an abstract concept ineligible for patent protection. The claims of U.S. Patent. No. 8,437,797, which Plaintiff Rothschild Patent Imaging LLC asserts in this case against Defendant Confide, Inc., are directed to this abstract idea and do not claim any inventive concept sufficient to confer patent eligibility.

The '797 Patent attempts to claim the abstract idea of receiving photographs, filtering them "using a transfer criteria," and then wirelessly transmitting the filtered photographs to another device. The specification acknowledges that the recited image capturing devices can be "virtually any device structured to capture one or more digital images." '797 Patent at 3:47–48. The filtering process can be performed manually by users who "may manually tag or embed the image(s) with data corresponding to the subject matter, theme, topic thereof." *Id.* at 9:9–11. Finally, the transmission of the photographs is done using admittedly conventional methods, including "short-range communication technology such as Bluetooth, infrared ('IR'), and/or other personal area networks ('PAN')." *Id.* at 3:29–31. The '797 Patent therefore claims the practice of an abstract idea using conventional technology.

Resolving this issue does not require discovery or claim construction. Plaintiff's factual allegations, when presumed true, do not avoid dismissal. Therefore, to avoid waste of judicial and party resources litigating an invalid patent, Confide requests that the Court grant its motion to dismiss Plaintiff's claims pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I.    **STATEMENT OF THE ISSUE**

Abstract ideas are ineligible for patentability under 35 U.S.C. § 101, absent an inventive concept that amounts to significantly more than the abstract idea. The claims of the '797 Patent is directed to the abstract idea of receiving, filtering, and transmitting images. The '797 Patent does not include an inventive concept beyond that idea. Should the Court therefore dismiss Plaintiff's claims pursuant to Rule 12(b)(6)?

1

## II.  STATEMENT OF THE FACTS

On February 23, 2022, RPI filed a Complaint accusing Confide of infringing U.S. Patent No. 8,437,797, entitled "Wireless Image Distribution System and Method." (Dkt. 1 at ¶ 13.) Confide now brings this Motion to Dismiss because the '797 Patent is invalid per 35 U.S.C. § 101.

The claims of the '797 Patent are "directed to a system and method for distributing at least one digital photographic image from a capturing device . . . to one or more receiving devices, wherein the receiving device(s) is cooperatively structured to automatically and/or selectively receive the digital photographic image(s) from the capturing device." ('797 Pat. at 2:17–24.) RPI asserts that Confide infringes "at least Claim 16 of the '797 Patent." (Dkt. 1 at ¶ 13.) Claim 16 is representative and recites:

> 16. A method performed by an image-capturing mobile device, comprising
>
> receiving a plurality of photographic images;
>
> filtering the plurality of photographic images using a transfer criteria; and
>
> transmitting, via a wireless transmitter and to a second image capturing device, the filtered plurality of photographic images, wherein
>
> the image-capturing mobile device and the second mobile device are disposed in a selectively paired relationship with one another based upon an affinity group associated with the second mobile device.

'797 Pat. at 14:52–62. Claim 16 is directed to a method of receiving images, filtering the images based on their content, and transmitting the filtered images between devices.

The specification discloses only generic computer components in functional terms. For example, the capturing devices are described as "generally compris[ing] **virtually any device** structured to capture one or more digital photographic images," including "a digital photographic camera, camcorder, video camera, etc." or "cellular telephone, PDA, video game console, etc.,

2

having the structures and/or mechanism capable of capturing digital photographic images." '797 Pat. at 3:45–58 (emphasis added). The display assembly can be anything "structured and disposed to display to a user thereof various data, images, etc.[, and] may be virtually any size and may include **virtually any display device**, including but not limited to a liquid crystal display ('LCD')." *Id.* at 4:4–8 (emphasis added). The electronic storage medium can be anything "structured to electronically store the one or more digital photographic images thereon," and may include "an internal hard drive or other like mechanism," or "a removable memory card, Universal Serial Bus ('USB') drive, Firewire drive, flash drive, etc." *Id.* at 4:26–8, 4:34–36.

The technology disclosed in the specification is likewise generic. For example, the specification discloses that the claimed invention uses known modes of wireless transmission, including "short-range communication technology such as Bluetooth, infrared ('IR'), and/or other personal area networks ('PAN')." *Id.* at 3:29–31. The modes of communication are virtually unbounded because they may also "comprise a local area network ('LAN'), wide area network ('WAN'), satellite, WiFi, cellular, and/or the World Wide Web accessible via an Internet Protocol or other like protocols." *Id.* at 3:37–40. Finally, the specification provides that the crux of the alleged invention—image filtering—may be carried out by users manually selecting images, *id.* at 6:21–24, 27–32, or by "object recognition software or other mechanism(s) for identifying objects or individuals within a captured image," *id.* at 9:6–8. Neither the specification nor the claims discloses *how* any such recognition software might work, but simply relies on others to develop that technology.

### III.   LEGAL STANDARDS

#### A.   Rule 12(b)(6)

To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must plead sufficient factual allegations "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.*

3

*Twombly*, 550 U.S. 544, 570 (2007). Although factual allegations are taken as true, legal conclusions are given no deference. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (noting tenet of taking allegations as true in a motion to dismiss "is inapplicable to legal conclusions"). "On a 12(b)(6) motion to dismiss, a district court may consider only the complaint, documents attached to the complaint, matters of which a court can take judicial notice, documents possessed by plaintiffs, or documents that plaintiffs knew about and relied upon." *Homeward Residential, Inc. v. Sand Canyon Corp.*, 298 F.R.D. 116, 122–23 (S.D.N.Y. 2014). "[W]hen the allegations in a complaint, however true, could not raise a claim of entitlement to relief [as a matter of law], this basic deficiency should . . . be exposed at the point of minimum expenditure of time and money by the parties and the court." *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (internal citations and quotations omitted).

### B. 35 U.S.C. § 101

Section 101 of the Patent Act sets forth four categories of patentable subject matter: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. Also, the law recognizes three exceptions to patent eligibility: "laws of nature, physical phenomena, and **abstract ideas**." *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980) (emphasis added). Abstract ideas are ineligible for patent protection because a monopoly over these ideas would preempt their use in all fields. *Bilski v. Kappos*, 561 U.S. 593, at 611–12 (2010). In other words, "abstract intellectual concepts are not patentable, as they are the basic tools of scientific and technological work." *Id.* at 653 (quoting *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)).

Determining whether a patent claim is impermissibly directed to an abstract idea involves two steps. First, the court determines "whether the claims at issue are directed to a patent-ineligible concept." *Alice Corp. Pty. Ltd. v. CLS Bank Intern.*, 573 U.S. 208, 218 (2014). Second, if the claim contains an abstract idea, the court evaluates whether there is "an 'inventive

concept'—*i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id.* (internal quotations and citations omitted).

Transformation into a patent-eligible application requires "more than simply stating the abstract idea while adding the words 'apply it.'" *Id*. at 221 (quoting *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1294 (2012)). Indeed, if a claim could be performed in the human mind, or by a human using pen and paper, it is not patent-eligible. *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372 (Fed. Cir. 2011). Also, a claim is not meaningfully limited if it includes only token or insignificant pre- or post-solution activity—such as identifying a relevant audience, category of use, field of use, or technological environment. *Mayo*, 132 S. Ct. at 1297–98, 1300–01; *Bilski*, 561 U.S. at 610; *Diamond v. Diehr*, 450 U.S. 175, 191–92 & n.14 (1981); *Parker v. Flook*, 437 U.S. 584, 595 n.18 (1978). Finally, "simply appending conventional steps, specified at a high level of generality, to laws of nature, natural phenomena, and abstract ideas cannot make those laws, phenomena, and ideas patentable." *Mayo*, 132 S. Ct. at 1300; *see also Fort Props., Inc. v. Am. Master Lease LLC*, 671 F.3d 1317, 1323 (Fed. Cir. 2012) ("Such a broad and general limitation does not impose meaningful limits on the claim's scope.").

Patentability under 35 U.S.C. § 101 is a threshold legal issue. *Bilski*, 561 U.S. at 602. Accordingly, the § 101 inquiry is properly raised at the pleadings stage if it is apparent from the face of the patent that the asserted claims are not directed to eligible subject matter. *See Ultramercial, Inc. v. Hulu*, LLC, 772 F.3d 709, 718–19 (Fed. Cir. 2014) (Mayer, J., concurring). In those situations, claim construction is not required to conduct a § 101 analysis. *Bancorp Servs. L.L.C. v. Sun Life Assur. Co.*, 687 F.3d 1266, 1273 (Fed. Cir. 2012) ("[W]e perceive no flaw in

the notion that claim construction is not an inviolable prerequisite to a validity determination under § 101.").

IV.     **ARGUMENT**

    A.    **Step 1: The Claims of the '797 Patent are Directed to the Abstract Idea of Receiving, Filtering, and Transmitting Images.**

Step one of the *Alice* inquiry requires an examination of the claims to determine whether their "focus" or "character as a whole" is directed to excluded subject matter. *SAP Am., Inc. v. InvestPic, LLC*, 898 F.3d 1161, 1167 (Fed. Cir. 2018); *see also Dealertrack Inc. v. Huber*, 674 F.3d 1315, 1334 (Fed. Cir. 2012) ("In considering patent eligibility under § 101, one must focus on the claims."). The goal of this examination is to identify the basic concept at the "heart" of the claims. *See Ultramercial*, 772 F.3d at 714-15 (abstract idea at the "heart" of the eleven step claim was using advertising as an exchange or currency). For computer-implemented claims, "the first step of the *Alice* inquiry . . . asks whether the focus of the claims is on specific asserted improvements in computer capabilities . . . or, instead, on . . . an 'abstract idea' for which computers are invoked merely as a tool." *Enfish, LLC v. Microsoft Corp.*, 822 F.3d 1327, 1335-36 (Fed. Cir. 2016).

As is evident from its face, the '797 Patent claims the combination of two ideas that the Federal Circuit has repeatedly held to be abstract—data communication and data manipulation—and invokes generic computer components used in their conventional manner to practice these ideas. *See, e.g.*, *Elec. Power Grp., LLC v. Alstom S.A.*, 830 F.3d 1350, 1353 (Fed. Cir. 2016) ("Information as such is an intangible. Accordingly, we have treated collecting information, including when limited to particular content (which does not change its character as information), as within the realm of abstract ideas.") (collecting cases); *Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 850 F.3d 1332, 1340 (Fed. Cir. 2017) (finding patent claim

6

"directed to . . . collecting, displaying, and manipulating data" abstract); *EasyWeb Innovations, LLC v. Twitter, Inc.*, 689 F. App'x 969, 971 (Fed. Cir. 2017) ("As we have explained in a number of cases, claims involving data collection, analysis, and publication are directed to an abstract idea.").

As to the first idea, data communication, the claims rely heavily on technical-sounding terms that ultimately amount to sending and receiving information. Claim 1 requires "a wireless receiver" and "a wireless transmitter." These elements are abstract because "the broad concept of communicating information wirelessly, without more, is an abstract idea." *Chamberlain Grp., Inc. v. Techtronic Indus. Co.*, 935 F.3d 1341, 1347 (Fed. Cir. 2019), *cert. denied*, No. 19-1299. The claims' use of "technical jargon" such as "receiver" and "transmitter" is no savior because "[c]laims do not become eligible simply because they are written or characterized in a 'highly technical' manner." *Ericsson Inc. v. TCL Commc'n Tech. Holdings Ltd.*, 955 F.3d 1317, 1328 at n.2 (Fed. Cir. 2020) (finding error in a district court's reasoning that certain claims' "highly technical" nature supports the conclusion that they are not directed to an abstract idea).

As to the second idea, data filtering also does not save the claims because the Federal Circuit has held that this too is an abstract idea. The claims of the '797 Patent require filtering photographs "using a transfer criteria." '797 Pat. at Independent Claims 1, 5, 6, 8, 9, 13, 16. Filtering photographs is a form of data manipulation because it involves organizing information (photographs) according to a rule (*e.g.*, the "title of the image(s) 25, subject matter of the image(s) 25, and/or any of the other data component(s) of the digital photographic image(s) 25 . . ." '797 Pat. at 6:28–30). This is an abstract idea that people have long performed without the aid of technology. *See, e.g.*, *BASCOM Glob. Internet Servs., Inc. v. AT&T Mobility LLC*, 827 F.3d 1341, 1348 (Fed. Cir. 2016) ("[F]iltering content is an abstract idea because it is a

longstanding, well-known method of organizing human behavior, similar to concepts previously found to be abstract.") For example, it is common practice to receive a collection of photographs (*e.g.*, a stack of Polaroids), pick certain ones depending on their content (*e.g.*, pictures of one's child), and forward those selected photographs onward (*e.g.*, to the child's grandparents).

Several cases are particularly applicable to the claims at hand. In *TLI*, the asserted patent claimed a method of "manually or automatically" assigning "classification data . . . to digital images and sending those images to a server [that] extracts the classification data and stores the digital images, 'taking into consideration the classification information.'" *TLI Communications, LLC v. AV Automotive LLC*, 823 F.3d 607, 610 (Fed. Cir. 2016). Representative Claim 17 is similar to the claims at issue here:

> 17. A method for recording and administering digital images, comprising the steps of:
>
> recording images using a digital pick up unit in a telephone unit;
>
> storing the images recorded by the digital pick up unit in a digital form as digital images;
>
> transmitting data including at least the digital images and classification information to a server, wherein said classification information is prescribable by a user of the telephone unit for allocation to the digital images;
>
> receiving the data by the server;
>
> extracting classification information which characterizes the digital images from the received data; and
>
> storing the digital images in the server, said step of storing taking into consideration the classification information.

*Id.* The Federal Circuit held that Claim 17 was drawn to the abstract idea of "classifying an image and storing the image based on its classification." *Id.* at 611. The recited physical components—"a telephone unit" and a "server"—"merely provide a generic environment in

8

which to carry out this abstract idea," not "a specific improvement to computer functionality." *Id.* at 611–12. "The specification [also] fail[ed] to provide any technical details for the tangible components, but instead predominantly describes the system and methods in purely functional terms," making them "merely conduits for the abstract idea." *Id.* at 612.

Similarly, in *Content Extraction*, the Federal Circuit held that "the claims of the asserted patents are drawn to the abstract idea of 1) collecting data, 2) recognizing certain data within the collected data set, and 3) storing that recognized data in a memory." *Content Extraction and Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343, 1347 (Fed. Cir. 2014). The court held that the "concept of data collection, recognition, and storage is undisputedly well-known. Indeed, humans have always performed these functions." *Id.* The claims of the '797 Patent are similarly unbounded in their recitation of receiving data, filtering data, and transmitting data, and are likewise directed to this abstract idea.

Although the specification alludes to "object recognition software or other mechanism(s) for identifying objects or individuals within a captured image," it fails to teach how such software would work, and the claims do not include any specific implementation thereof. '797 Pat. at 9:6–8. Consequently, they are directed to the idea of filtering images itself. *See Affinity Labs of Texas, LLC v. DIRECTV, LLC*, 838 F.3d 1253, 1258 (Fed. Cir. 2016) ("There is nothing in claim 1 that is directed to how to implement out-of-region broadcasting on a cellular telephone. Rather, the claim is drawn to the idea itself."); *see also Apple, Inc. v. Ameranth, Inc.*, 842 F.3d 1229, 1241 (Fed. Cir. 2016) (finding ineligible claims that do not recite "a particular way of programming or designing the software to create menus that have these features, but instead merely claim the resulting systems."). Moreover, "[the Federal Circuit has] treated analyzing information by steps people go through in their minds, or by mathematical algorithms,

without more, as essentially mental processes within the abstract-idea category." *Elec. Power*, 830 F. 3d at 1354. Therefore, filtering images is an ineligible abstract idea. The '797 Patent's claims fail step one because they are directed to this abstract idea and invoke generic computer components only as a means for implementing it.

**B.     Step 2: The Claims of the '797 Patent Fail to Recite Any Inventive Concept.**

Because the claims of the '797 Patent are directed to a patent-ineligible abstract idea, the Court must consider the second step of the *Alice* test. This step requires the Court to decide "whether the remaining elements, either in isolation or in combination with the non-patent-ineligible elements, are sufficient to transform the nature of the claim into a patent-eligible application." *Intellectual Ventures I LLC v. Capital One Bank (USA)*, 792 F.3d 1363, 1366–67 (Fed. Cir. 2015). When looking at computer-related technology such as that in the '797 Patent, courts determine whether there are "specific improvements in the recited technology that go beyond 'well-understood, routine, conventional activities' and render the invention patent-eligible." *BASCOM*, 827 F.3d at 1349 (citing *Alice*, 134 S. Ct. at 2359).

Nothing in the claims amounts to something "significantly more" than the abstract idea of filtering images such that the claims rise above this abstract idea because they rely entirely on conventional components performing in a conventional manner. *See, e.g.*, '797 Pat. at Claim 1 ("a wireless receiver," "a wireless transmitter," "a processor," "receive a plurality of photographic images"). These components merely provide a generic environment in which "well-understood, routine, activities previously known to the industry" are used to carry out the abstract idea of receiving, filtering, and transmitting images. *See TLI*, 823 F.3d at 614 (original brackets omitted).

For example, the specification states that a capturing device "generally comprises **virtually any device** structured to capture one or more digital photographic images," including

10

"a digital photographic camera, camcorder, video camera, etc." or "cellular telephone, PDA, video game console, etc., having the structures and/or mechanism capable of capturing digital photographic images." *Id.* at 3:45–58 (emphasis added). The specification does not discuss the "wireless transmitter" or the "wireless receiver" recited in Claim 1, 5, 6, and 8 in any detail. What it does describe—in purely functional terms, and in well-known examples—is the modes of wireless transmission that may be used in the claimed invention, listing "short-range communication technology such as Bluetooth, infrared ('IR'), and/or other personal area networks ('PAN')," or other "wireless network(s) and/or communication protocol" such as "a local area network ('LAN'), wide area network ('WAN'), satellite, WiFi, cellular, and/or the World Wide Web accessible via an Internet Protocol or other like protocols." *See id.* at 3:29–40.

RPI has previously alleged that the "processor" saved the claims from abstraction because it is purportedly not generic. *Rothschild Patent Imaging LLC v. Gnome Foundation*, No. 4:19-cv-05414-HSG, Dkt. 34 at 12 (N.D. Cal.). The "processor" element is insufficient to save the claims in which it appears because it is a generic component. This is irrefutable because the '797 Patent's specification does not mention a processor at all, let alone a non-generic one, and so there are no details of its functionality that could render it anything but generic.

In sum, the claimed elements of the '797 Patent, individually and as an ordered combination, do not transform the claims into patent-eligible subject matter because they behave exactly as expected according to their normal use, and in a well-understood, routine, and conventional manner.

    **C.**    **No Factual or Claim Construction Disputes Prevent the Court From Ruling.**

The issue of the patent eligibility is ripe for the Court's consideration. This case is unlike *Berkheimer* or *Cellspin*, where plaintiffs' non-conclusory allegations were sufficient to establish at least a factual dispute as to whether the patents-at-issue claimed an inventive concept. In

11

*Berkheimer*, the Federal Circuit noted that the specification explicitly "describe[d] an inventive feature that store[d] parsed data in a purportedly unconventional manner." 881 F.3d 1360, 1369 (Fed. Cir. 2018). In *Cellspin*, the amended complaint identified "several ways in which its application of capturing, transferring, and publishing data was unconventional." 927 F.3d 1306, 1316 (Fed. Cir. 2019).

Here, there is no factual dispute whether the '797 Patent claims unconventional mechanisms of implementing the abstract idea. Neither the '797 Patent nor the Complaint contain any such allegation. There are also no claim construction issues affecting the *Alice* analysis because Plaintiff has not proposed any constructions of the '797 Patent's terms that would alter the ineligibility of the claims. The issue of the patent eligibility is thus ripe for the Court's consideration.

V.     CONCLUSION

RPI has failed to state a claim because asserted U.S. Patent No. 8,437,797 is directed to patent-ineligible subject matter. Confide respectfully requests the Court grant its motion to dismiss RPI's claims with prejudice.


Dated: March 18, 2022                    Respectfully submitted,

**FISH & RICHARDSON P.C.**

By: */s/ Excylyn J. Hardin-Smith*
    Excylyn J. Hardin-Smith (EHS7780)
    7 Times Square, 20th Floor
    New York, New York 10036
    Tel: (212) 765-5070
    Fax: (212) 258-2291
    hardin-smith@fr.com

    Neil J. McNabnay (*pro hac vice* forthcoming)
    Ricardo J. Bonilla (*pro hac vice* forthcoming)
    Michael A. Vincent (*pro hac vice* forthcoming)
    1717 Main Street, Suite 5000
    Dallas, Texas 75201
    (214) 747-5070 (Telephone)
    (214) 747-2091 (Facsimile)
    mcnabnay@fr.com
    rbonilla@fr.com
    vincent@fr.com

**COUNSEL FOR DEFENDANT CONFIDE, INC.**

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on March 18, 2022, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the Court's CM/ECF system, which will send notification of such filing to all counsel of record.

*/s/ Excylyn J. Hardin-Smith*
Excylyn J. Hardin-Smith